UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SIGMA-ALDRICH CORPORATION, EMD MILLIPORE CORPORATION, and RESEARCH ORGANICS LLC d/b/a SAFC CLEVELAND, | ) ) ) ) ) ) | |
| Plaintiffs | ) ) ) | Civil Action No. 23-cv-10140-DJC |
| v. | ) ) | |
| DAVID S. STONEBROOK, | ) ) | |
| Defendant. | ) ) | |

MEMORANDUM AND ORDER

**CASPER, J.**                                                                                          **July 12, 2025**

## I.   Introduction

Plaintiffs and Counterclaim Defendants Sigma-Aldrich Corporation ("Sigma-Aldrich"), EMD Millipore Corporation ("EMD Millipore"), and Research Organics LLC d/b/a SAFC Cleveland ("SAFC Cleveland") (collectively, "MilliporeSigma") have filed this lawsuit against Defendant David S. Stonebrook ("Stonebrook") alleging breach of contract and seeking injunctive relief.  D. 72.  Stonebrook filed an answer with a counterclaim alleging intentional misrepresentation, D. 73, which he has now amended, D. 77.  MilliporeSigma has moved to dismiss the amended counterclaim under Fed. R. Civ. P. 9(a) and Fed. R. Civ. P. 12(b)(6) and to strike certain portions of the amended counterclaim. D. 78. For the reasons stated below, the Court ALLOWS MilliporeSigma's motion to dismiss the amended counterclaim but DENIES the portion of same seeking to strike portions of the amended counterclaim.  D. 78.

1

## II.     Standards of Review

### A.     Federal Rule of Civil Procedure 9(b)

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The purpose of Rule 9(b) is "to give notice to defendants of the plaintiffs' [fraud] claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover the relevant information during discovery." Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996) (citing McGinty v. Beranger Volkswagen, Inc., 633 F.2d 226, 228-29 & n. 2 (1st Cir. 1980)). "Rule 9(b) requires a party pleading fraud to specify the 'who, what, where, and when of the allegedly false or fraudulent representation.'" Robert E. Ricciardelli Carpet Serv., Inc. v. Home Depot U.S.A., Inc., 679 F. Supp. 2d 192, 207 (D. Mass. 2010) (quoting Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004)).

### B.     Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Germanowski v. Harris, 854 F.3d 68, 71 (1st Cir. 2017). Reading the amended counterclaim "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In sum, the counterclaim must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (quoting Iqbal, 556 U.S. at 678).

### III. Factual Background

The following facts are drawn from Stonebrook's amended counterclaim, D. 77, and are accepted as true for the purposes of resolving MilliporeSigma's motion to dismiss.

In September 2020, Sigma-Aldrich sought to hire a GMP Packaging Supervisor for its facility located in Cleveland, Ohio (the "Cleveland Facility"). D. 77 ¶ 24. Stonebrook applied for the position. Id. In response, a recruiter contacted Stonebrook on September 21, 2020 to communicate interest in setting up a call with him to discuss the role. Id. ¶ 25. On September 29, 2020, Stonebrook received an interview itinerary to which was attached a document containing job descriptions for GMP Packaging Supervisor. Id. ¶ 27. One of the duties of the position listed in the description was "[m]aintains GMP quality by establishing and maintaining organization standards." Id. On September 30, 2020, Sigma-Aldrich interviewed Stonebrook for the position. Id. ¶ 28. He was first interviewed by Anthony Whitmarsh ("Whitmarsh") who gave Stonebrook an overview of the position. Id. Whitmarsh explained that Stonebrook would be responsible for overseeing the packaging of the site's GMP products. Id. Next, Stonebrook was interviewed by Gergory Janetta ("Janetta"), Manager of Quality Control, who allegedly told him that "demand for the site's GMP products was strong and expected to grow." Id. ¶ 29. He also mentioned that the Cleveland Facility was "expanding its GMP packaging operations . . . to keep up with the demand for GMP products" and informed Stonebrook that he "would be responsible for improving existing GMP processes." Id. Lastly, Stonebrook was interviewed by Eric Tackett ("Tackett") who allegedly told him that the "current demand for the site's GMP products led to the opening." Id. ¶ 30.

Sigma-Aldrich postponed further interviews due to scheduling issues. Id. ¶ 31. As a result, Stonebrook withdrew his candidacy. Id. On November 10, 2020, Stonebrook once again applied for the GMP Packaging Supervisor position at the Cleveland Facility. Id. ¶ 32. On November

12, 2020, Sigma-Aldrich invited Stonebrook to interview with Whitmarsh and Tackett. Id. ¶ 33. Tackett has worked in various positions at the Cleveland Facility for more than twenty years. Id. ¶ 34. On November 13, 2020, Stonebrook interviewed with Whitmarsh and Tackett. Id. ¶ 36. During the interview, Whitmarsh and Tackett described the position as "stable" and allegedly told Stonebrook that the Cleveland Facility was GMP compliant. Id. They also told Stonebrook that the site had a growing demand for GMP products. Id. Tackett allegedly communicated that he was anxious to "have GMP processes improved." Id. Later, on November 19, 2020, Stonebrook participated in another interview with Operations Manager Joseph Viskocil, Tackett and Whitmarsh, during which Stonebrook alleges that "none of the interviewers told [him] that the Cleveland Facility did not comply with GMP standards." Id. ¶ 39.

Sigma-Aldrich offered Stonebrook the position of GMP Packaging Supervisor on December 3, 2020, which he accepted on December 8, 2020. Id. ¶¶ 40-41. Stonebrook began working at the Cleveland Facility on January 4, 2021. Id. ¶ 45. Between January 11 and January 14, 2021, Stonebrook was given access to a database containing a copy of the Cleveland Facility's Quality Manual (the "Manual") which allegedly indicated that the Cleveland Facility's Quality System was only compliant to ISO9001:2015, and not with 21 CFR Part 210/211, the GMP regulations. Id. ¶¶ 8-9, 47. As alleged, this was the first time Stonebrook learned that the Cleveland Facility was GMP non-compliant. Id. ¶ 47. Then, on January 15, 2021, Stonebrook allegedly observed two products being mislabeled as GMP compliant. Id. ¶¶ 48-49. On February 5, 2021, Stonebrook emailed Tackett to report quality concerns, including what he believed to be labels that were misrepresented as GMP compliant. Id. ¶ 52. Stonebrook copied Robert Nass ("Nass") (Head of Quality and Regulatory Management for Merck Life Science), Yvonne Albert ("Albert") (Head of HR for MilliporeSigma), David Hutchinson ("Hutchinson") (General Counsel for MilliporeSigma), Dieter Hofner ("Hofner") (Head of APIs, Excipients and Cell Media and

4

Technology for Sigma-Aldrich) and Christos Ross ("Ross") (Interim Sector Head of Life Science for MilliporeSigma) on the email. Id. The next day, Stonebrook prepared a report documenting his concerns that Sigma-Aldrich was selling GMP branded products to customers despite not having GMP certification and expressed his belief that such a conduct could result in civil or criminal liability. Id. ¶ 53. He submitted this report through Speak-Up, a program designed to allow employees to raise safety and quality concerns. Id.

On February 8, 2021, Stonebrook emailed Albert, Nass and Ross to inform them of his intent to notify regulators if the Cleveland Facility continue to mislabel products as GMP compliant. Id. ¶ 54. On February 9, 2021, Melissa Reed ("Reed"), Head of Employee Relations, contacted Stonebrook to convey her concern for the observations Stonebrook had identified in his report. Id. ¶ 56. On February 15, 2021, Reed and Hofner contacted Stonebrook and assured him that his allegations will be investigated. Id. ¶ 58. On February 23, 2021, Stonebrook contacted the Food and Drug Administration ("FDA") to report that the Cleveland Facility was selling products branded as having GMP certification. Id. ¶ 60.

On February 25, 2021, Stonebrook contacted Whitmarsh to ask for a personal day off for February 26, 2021 and was allegedly approved. Id. ¶ 62. On February 28, 2021, Reed placed Stonebrook on paid leave, allegedly for missing a quality investigation debrief that was scheduled for February 26, 2021. Id. ¶ 64. On March 3, 2021, Reed emailed Stonebrook attaching a letter from Jane Findlay, SAFC's Head of Quality Operations, that outlined the investigation into Stonebrook's allegations of the Cleveland Facility. Id. ¶ 65. Stonebrook alleges that he was terminated later that same day. Id. ¶ 66.

## IV. Procedural History

This is not the parties' first dispute before this Court. On May 25, 2021, Stonebrook initiated a *qui tam* action as a relator against MilliporeSigma and Merck KGaA, Darmstadt,

5

Germany (collectively, "Defendants") alleging that Defendants had submitted false claims to the government and had retaliated against him in violation of the False Claims Act. United States ex rel. Stonebrook v. Merck KGaA, Darmstadt, Germany, No. 21-cv-10866-DJC, 2024 WL 1142702, at *1 (D. Mass. Mar. 15, 2024) ("Stonebrook"). The government declined to intervene, Stonebrook D. 23, 43, and Stonebrook elected to proceed against the defendants. Stonebrook D. 70. On March 15, 2024, the Court allowed Defendants' motion to dismiss as to both claims. Stonebrook D. 123. MilliporeSigma initiated this case on January 20, 2023, D. 1, and filed an amended complaint on June 28, 2024. D. 72. Stonebrook filed his initial answer and counterclaim to MilliporeSigma's amended complaint, D. 73, and later amended the answer and counterclaim. D. 77. MilliporeSigma now has moved to dismiss and/or strike the amended counterclaim. D. 78. The Court heard the parties and took the matter under advisement. D. 88.[1]

V. Discussion

    A. **Stonebrook Has Pled the Alleged Misrepresentations With Sufficient Particularity Under Rule 9(b)**

Under Ohio law,[2] an intentional misrepresentation claim must be pleaded with sufficient particularity as required under Fed. R. Civ. P. 9(b). See Dooley v. Wells Fargo Bank, Nat. Ass'n, 941 F. Supp. 2d 862, 868 (S.D. Ohio 2013) (citing Fed. R. Civ. P. 9(b)). As to the specifics of "who, what, where, and when," Robert E. Ricciardelli Carpet Serv., Inc., 679 F. Supp. 2d at 207 (quoting Alternative Sys. Concepts, Inc., 374 F.3d at 29), this "specificity requirement extends

---

[1] Stonebrook moved to file a supplemental brief, D. 86, which MilliporeSigma opposes, D. 90. The Court ALLOWS the motion and has considered the supplemental brief, D. 86-1, in the resolution of the pending motion.

[2] The parties agree that Ohio law applies. D. 79 at 10; D. 80 at 2. At any rate, the analysis would be the same under either Ohio or Massachusetts law as the elements for intentional misrepresentation are the same. See Ferrante v. Santander Bank, N.A., 680 F. Supp. 3d 52, 59-60 (D. Mass. 2023); Addison Holdings, LLC v. Fox, Byrd & Company, P.C., 203 N.E.3d 1259, 1282 (Ohio Ct. App. 2022) (citations omitted).

only to the particulars of the allegedly misleading statement itself. The other elements of fraud, such as intent and knowledge, may be averred in general terms." Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004) (citations omitted).

Here, Stonebrook has pleaded the misrepresentations with sufficient particularity. First, Stonebrook adequately specified the "who" and "what" of the alleged misrepresentations by alleging that Whitmarsh and Tackett had represented to him that the Cleveland Facility was GMP compliant. D. 77 ¶ 36, 69. Stonebrook also specified the "when" and "where" of the alleged misrepresentation by alleging that the misrepresentations were made during the November 13, 2020 interview. Id. ¶ 36. Accordingly, because Stonebrook's allegations are sufficiently specific as to "speaker, content, context, and time" of the alleged misrepresentations, Rodi, 389 F.3d at 15, the Court denies the motion to dismiss on Rule 9(b) grounds.

**B.    Intentional Misrepresentation**

To state a claim for intentional misrepresentation under Ohio law, a plaintiff must allege plausibly "all six of the following elements: (1) a representation or, when a duty to disclose exists, concealment of a fact, (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance." Addison Holdings, 203 N.E.3d at 1282. MilliporeSigma argues that Stonebrook has failed to state a claim because he has not pleaded (1) the materiality of the alleged misrepresented facts, (2) that the alleged misrepresentations were made with the intent to induce Stonebrook into reliance, (3) that his injury was caused by his reliance upon the alleged misrepresentation and (4) that "to the extent Stonebrook's misrepresentation claim is based on

7

alleged omissions . . . he fails to allege a fiduciary relationship with SAFC Cleveland, Tackett or Whitmarsh giving rise to a duty to disclose." D. 79 at 11-15.

### 1. Even Assuming that Stonebrook Has Adequately Pled Materiality, He Has Failed to Allege Other Requisite Elements Plausibly

"The materiality of a misrepresentation is a mixed question of law and fact that, under most circumstances, should be determined by the trier of fact." Erie Ins. Exchange v. Cotten, No. 2016-CA-00132, 2017 WL 35505, at *4 (Ohio Ct. App. Jan. 3, 2017) (quoting Abon, Ltd. v. Transcon. Ins. Co., No. 2004-CA-0029, 2005 WL 1414486, at *13 (Ohio Ct. App. June 16, 2005)).

MilliporeSigma contends that Stonebrook has not pleaded the materiality element because he did not allege "that he would not have entered into his employment arrangement with SAFC Cleveland, nor that he would have negotiated any differently but for [] Tackett and Whitmarsh's alleged misrepresentations." D. 79 at 11. Under Ohio law, a fact is material if it can "influence[] the mind of the party to whom they are made in making the contract or fixing its terms." Andersons, Inc. v. Consol, Inc., 185 F. Supp. 2d 833, 844 (N.D. Ohio 2001) (citation omitted), aff'd, 348 F.3d 496, 844 (6th Cir. 2003); see Leal v. Holtvogt, 702 N.E.2d 1246, 1262 (Ohio Ct. App. 1998) (articulating that "[a] fact is material if it is likely, 'under the circumstances, to affect the conduct of a reasonable person with reference to the transaction'") (quoting Van Camp v. Bradford, 623 N.E.2d 731, 737-38 (Ohio Com. Pl. 1993)).

Here, as alleged, the job description provided to Stonebrook indicates that he was to be responsible for, among other things, "[m]aintain[ing] GMP quality by establishing and maintaining organization standards." D. 77-1 at 1. At his November interview, Whitmarsh and Tackett allegedly represented to Stonebrook that the Cleveland Facility was GMP compliant. D. 77 ¶ 36. Stonebrook further alleges that had they told him that the Cleveland Facility was not GMP compliant, Stonebrook "would have sought additional information to understand the true nature of the job[,] . . . would have considered that additional information in deciding whether to accept the

8

job," and that Stonebrook might have "considered other job prospects." Id. ¶ 37. Considering these allegations in the light most favorable to Stonebrook, some reasonable minds could differ as to whether these representations were material to a reasonable person's decision to accept employment, Erie Ins. Exchange, 2017 WL 35505, at *4, and, as such, he has at least plausibly alleged the materiality element.

### 2.    Stonebrook Has Not Adequately Alleged Intent

"Fraudulent intent requires an actual intent to mislead, which is more than mere negligence[.]"  In re Copeland, 291 B.R. 740, 766 (Bankr. E.D. Tenn. 2003) (citing Palmacci v. Umpierrez, 121 F.3d 781, 788 (1st Cir. 1997)).  "In order to [allege plausibly] knowing falsity or intent to mislead, 'a plaintiff is not necessarily required to present direct evidence, such as a confession by the tortfeasor that he knowingly deceived plaintiff.  Rather, a plaintiff may present circumstantial evidence to show the required knowledge or intent.'" Wojcik v. Shell Oil Co., No. 08-cv-1807-SO, 2012 WL 13032962, at *11 (N.D. Ohio Mar. 30, 2012) (citing Doyle v. Fairfield Mach. Co., Inc., 697 N.E.2d 667, 678 (Ohio Ct. App. 1997)).

Here, MilliporeSigma argues that Stonebrook's allegation that Tackett and Whitmarsh "had an incentive" to deceive Stonebrook is too "speculative" to support plausibly the element of intent.  D. 79 at 13.  The Court agrees.  Even considering Stonebrook's allegations—i.e., that Tackett has worked at the Cleveland Facility for more than twenty years, serving in various leadership positions including as Director of Manufacturing Quality and Process Development from 2010 to 2012 and as Head of Buffer Operations since 2020, D. 77 ¶ 34, and that Whitmarsh has worked at MilliporeSigma for more than fourteen years and has been serving as Materials Manager at the Cleveland Facility as of 2020 where he generated weekly packaging schedules and met weekly with supervisors to plan packaging activities, id. ¶ 35, such background information does not make the allegations about their knowledge and intent to defraud more probable.  Dana

v. Aon Consulting, Inc., 984 F. Supp. 2d 755, 769 (N.D. Ohio 2013) (dismissing misrepresentation claim for failure to allege facts showing knowledge of the falsity of statements or intent to defraud); Efron v. USB Financial Servs., Inc. of Puerto Rico, 91 F.4th 430, 438-39 (1st Cir. 2024) (noting that the falsity of a statement alone is insufficient and dismissing RICO claim where only conclusory allegations about an intent to defraud were made). Accordingly, Stonebrook has failed to adequately plead the intent element of the claim.

### 3. Stonebrook Has Failed to Allege Any Damages Plausibly

Even assuming *arguendo* that Stonebrook had sufficiently pled intent to defraud, he has nevertheless failed to state a claim for intentional misrepresentation because he cannot allege plausibly that any damages had resulted from his reliance upon the alleged misrepresentations. To satisfy this element of the claim, Stonebrook must plead that his injury, namely his termination, was proximately caused by his reliance upon the alleged misrepresentations. See Addison Holdings, LLC, 203 N.E.3d at 1282 (citations omitted). An act is the proximate cause of an injury if it is "the natural and probable consequence of the conduct[.]" State Farm Mut. Auto. Ins. Co. v. VanHoessen, 682 N.E.2d 1048, 1049 (Ohio Ct. App. 1996) (citations omitted). "To find that an injury was the natural and probable consequence of an act, it must appear that the injury complained of could have been foreseen or reasonably anticipated from the alleged [wrongful] act." Strother v. Hutchinson, 423 N.E.2d 467, 471 (Ohio 1981). Here, Stonebrook alleges that that he was terminated for notifying MilliporeSigma management that "the Cleveland Facility was misbranding products as GMP compliant, and that it was not complying with GMP quality standards." D. 77 ¶ 72. Stonebrook alleges that "[i]f the Cleveland Facility had . . . been GMP compliant," as represented by Tackett and Whitmarsh at the November interview, "Stonebrook would not have notified management of lack of GMP compliance or about Sigma-Aldrich's

fraudulently branding of products as GMP compliant, and therefore Stonebrook would not have been terminated." Id.

These allegations, however, are too attenuated to support a reasonable inference of proximate cause. See Paroline v. United States, 572 U.S. 434, 445 (2014) (explaining that "[a] requirement of proximate cause thus serves . . . to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity"). Because an intentional misrepresentation claim requires Stonebrook to plead that he had relied upon the alleged misrepresentations to his detriment, Stonebrook cannot state a claim for intentional misrepresentation if his injury would have occurred notwithstanding any reliance on said misrepresentations. See Compressed Gas Corp. v. U.S. Steel Corp., 857 F.2d 346, 351-52 (6th Cir. 1988) (holding that the plaintiff has failed to prove fraudulent misrepresentation because the plaintiff did not offer sufficient evidence to show that it had detrimentally relied upon the defendant's alleged misrepresentations about its advertisement). Here, as alleged, Stonebrook first learned that the Cleveland Facility was GMP non-compliant by reading the Manual. D. 77 ¶ 47. Stonebrook then allegedly discovered some products being mislabeled as GMP compliant. Id. ¶¶ 48-49. Spurred by these observations, Stonebrook began notifying members of MilliporeSigma management and others about his concerns which allegedly resulted in his termination. Id. ¶¶ 51-60, 72.

Thus, even as alleged, regardless of Tackett and Whitmarsh's alleged misrepresentations, Stonebrook would still have learned from the Manual that the Cleveland Facility was GMP non-compliant and witnessed the alleged mislabeling of products as GMP compliant. Id. ¶ 47-49. Given that Stonebrook's role there required him to "maintain GMP quality" and to "review nonconformances," D. 77-1 at 1, it is reasonable to infer that Stonebrook still would have reported the alleged mislabeling to management and consequently would, as he contends, be terminated for

11

doing so. Because the sequence of events that allegedly led to Stonebrook's termination would have occurred regardless of the representations, Stonebrook cannot plausibly allege that his injury was the "natural and probable consequence" of his reliance upon Tackett and Whitmarsh's statements. State Farm Mut. Auto. Ins. Co., 682 N.E.2d at 1049; see Karsnak v. Chess Fin. Corp., No. 97312, 2012 WL 1068973, at *12 (Ohio Ct. App. March 29, 2012) (holding that the plaintiff failed to establish a claim for fraudulent misrepresentation because she could not demonstrate how she had relied upon the defendant's misrepresentations to her detriment). As such, Stonebrook has failed to plead plausibly that his injury, namely his termination, was proximately caused by his reliance upon the alleged misrepresentations.[3]

Stonebrook argues that the causal link is not attenuated because as "an employee tasked with quality control, who was misled into believing that the plant was GMP compliant," it was reasonable for him to "be alarmed to learn that it was not and would report that issue to management." D. 86-1 at 6. This argument, however, is unpersuasive because what is required to state an intentional misrepresentation claim here is not whether there is a causal link between Stonebrook's injury and the alleged GMP non-compliance status of the Cleveland facility, but

---

[3] Stonebrook appears to assert two additional causal links between his termination and the alleged misrepresentations – (1) that Stonebrook would have either declined the job or demanded a higher salary during negotiation had he been told that the Cleveland Facility was GMP non-compliant and (2) that Stonebrook could have pursued other employment opportunities. D. 80 at 9. As to the first assertion, the counterclaim does not contain any factual allegations to allow for a reasonable inference that Stonebrook would have declined the job or negotiated for a higher salary regardless of what was represented concerning the Cleveland Facility's GMP compliance status. As to the second assertion, a plaintiff who allege damages from lost employment opportunities "must show that he [or she] was offered a specific opportunity and turned it down in reliance on the alleged fraud." Jones v. Kimberly-Clark Corp., No. 99-6290, 2000 WL 1800475, at *5 (6th Cir. 2000). Here, although Stonebrook asserts that he could have pursued other job opportunities but for the alleged misrepresentations, D. 77 ¶ 37; D. 80 at 9, he has failed to allege that he had turned down a specific employment opportunity in reliance upon the alleged misrepresentations. Accordingly, he cannot plausibly plead the causal element for his intentional misrepresentation based on lost employment opportunities.

whether such a link exists between the injury and his reliance upon Tackett and Whitmarsh's alleged misrepresentations proximately caused his injury. See Addison Holdings, LLC, 203 N.E.3d at 1282. Accordingly, Stonebrook has failed to plead the requisite causal element to state a claim for intentional misrepresentation here.

### 4. Stonebrook Has Failed to Allege Plausibly an Omissions-Based Misrepresentation Claim

Lastly, MilliporeSigma contends that to the extent Stonebrook is raising an omissions-based misrepresentation claim, such a claim also fails. D. 79 at 15 (quoting D. 77 ¶ 43 (alleging that "[a]t no point prior to Stonebrook accepting the offer, did any of the defendants inform Stonebrook that the Cleveland Facility was not GMP compliant")). It is unclear whether Stonebrook has even raised such a claim here, given that Stonebrook only alleges that he was injured by Whitmarsh and Tackett's representations at the November interview. D. 77 ¶¶ 69, 71-72. Moreover, Stonebrook did not address MilliporeSigma's omissions-based misrepresentation argument in his opposition to the motion to dismiss. See Uranga v. U.S. Citizenship & Immigr. Servs., 490 F. Supp. 3d 86, 109 (D.D.C. 2020) (alterations in original) (explaining that "when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded") (quoting CD Int'l Enters., Inc. v. Rockwell Cap. Partners, Inc., 251 F. Supp. 3d 39, 46 (D.D.C. 2017)).

Nevertheless, even if Stonebrook has raised such a claim, it has not been plausibly pled here. "Ohio law 'prohibits not only affirmative misrepresentation, but also fraudulent nondisclosure where there is a duty to disclose.'" In re Nat'l Century Fin. Enters., Inc., 504 F. Supp. 2d 287, 316 (S.D. Ohio 2007) (quoting State v. Warner, 564 N.E.2d 18, 40 (Ohio 1990)). To state a claim for intentional misrepresentation based on omission, in addition to the other elements described above, Stonebrook must also allege plausibly that "a duty to disclose exists."

13

Andersons, 348 F.3d at 509 (citing Federated Management, Co. v. Coopers & Lybrand, 738 N.E.2d 842, 854 (Ohio Ct. App. 2000)). "In particular . . . 'a duty to disclose arises primarily in a situation involving a fiduciary or other similar relationship of trust and confidence.'" Id. (citing Federated Management Co., 738 N.E. 2d at 855). Such a relationship is present there "[one reposes] special confidence and trust . . . in the integrity and fidelity of another." Id. (alteration in original) (quoting Federated Management Co., 738 N.E. 2d at 855). Here, the amended complaint does not contain any allegations suggesting that such a relationship existed between Stonebrook and Whitmarsh, Tackett, or Millipore Sigma at the time of the November interview as to impose a duty to disclose. Id. (citing Federated Management Co., 738 N.E. 2d at 855).

For the reasons explained above, Stonebrook has failed to state a claim for intentional misrepresentation. Accordingly, the Court allows MilliporeSigma's motion to dismiss the counterclaim.

        C.      **Motion to Strike**

Although the Court allows the motion to dismiss the amended counterclaim, the Court denies the portion of that motion that seeks to strike portions of that pleading from the docket. "Rule 12(f) endows this [C]ourt with 'considerable discretion' to strike 'from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter.'" Autila v. Massachusetts Bay Transportation Auth., 342 F.R.D. 23, 31 (D. Mass. 2022) (citations omitted). MilliporeSigma moves to strike affirmative defenses 2 and 3 from the amended answer as well as portions of paragraphs 22 and 30 and other portions of the amended counterclaim containing "references to [MilliporeSigma]'s alleged 'fraudulent labeling' and 'fraudulent branding.'" D. 79 at 15-16. Given the Court's dismissal of the counterclaim and because "[m]otions to strike affirmative defenses are generally disfavored," Kiernan Joseph Liebl, Inc. v. Indian Farm Ests. LLC, No. 24-

cv-11019-NMG, 2024 WL 4608540, at *2 (D. Mass. Oct. 28, 2024), the Court declines to allow the motion to strike here.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS MilliporeSigma's motion to dismiss the amended counterclaim, D. 78, but DENIES the portion of the motion that seeks to strike portions of the pleading, id.

**So Ordered.**

/s Denise J. Casper
United States District Judge